**John M. RICE, Appellant,**

v.

**Arthur L. McKENZIE, Acting Warden, West Virginia State Penitentiary,**
**Appellee.**

**No. 77–1475.**

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 5, 1977.

Decided Aug. 22, 1978.

Cynthia L. Turco, Charleston, W. Va. (Spilman, Thomas, Battle & Klostermeyer, Charleston, W. Va., on brief), for appellant.

William D. Highland, Asst. Atty. Gen., Charleston, W. Va. (Chauncey H. Browning, Jr., Atty. Gen. of W. Va., Charleston, W. Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, and WINTER and BUTZNER, Circuit Judges.

HAYNSWORTH, Chief Judge:

The question is whether a federal district judge must recuse himself in a federal habeas corpus case when, as chief justice of the state, he had participated in the state supreme court's adjudication of the same claims. The district judge thought not. We have no doubt that the disposition of the claims in the district court was without any actual bias or prejudice, but we think that the objective standards of 28 U.S.C.A. § 455(a) required his recusal and that the case should be resubmitted to another district judge.

After having been convicted for armed robbery in West Virginia, Rice was placed upon probation. Later, after a revocation hearing, his parole was revoked, and he was committed to prison, whereupon he sought to attack the validity of the probation revocation and of his conviction. In the attack upon the probation revocation, he sought another hearing in which he would have opportunity to controvert some of the facts found as warranting revocation, and he challenged the sufficiency of others to support the revocation of probation.

When these claims reached the Supreme Court of West Virginia, relief was denied in brief orders. At that time Judge Haden was the Chief Justice of West Virginia, and he participated in the rejection of Rice's claims by the Supreme Court of that state.

Later when Rice sought federal habeas relief in a petition attacking the validity of his probation revocation, the case was assigned to Judge Haden who by then had become a United States District Judge. Without an evidentiary hearing, which Rice had sought, Judge Haden denied the petition. However, he disclosed the fact that he probably had participated in the denial of relief by the West Virginia Supreme Court. He stated he perceived no personal basis for his disqualification but stated that he would consider a timely motion for disqualification. Such a motion was filed, but an order was entered in which the judge concluded there was "no personal or legal basis for disqualification." Accordingly, a final order denying habeas relief was entered.

On appeal, Rice complains of the denial of a federal evidentiary hearing and the acceptance as correct of the state court's findings, but we need consider none of the questions going to the merits since we have concluded that the petition should first be reconsidered in the district court by another district judge.

Resolution of the disqualification question turns upon an interpretation of 28 U.S.C.A. § 455, as amended in 1974. It provides in pertinent part:

(a) Any justice, judge, magistrate, or referee in bankruptcy of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

(b) He shall also disqualify himself in the following circumstances:

(1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

\*　　\*　　\*　　\*　　\*　　\*

(3) Where he has served in governmental employment and in such capacity participated as counsel, adviser or material witness concerning the proceeding or expressed an opinion concerning the merits of the particular case in controversy;

(4) He knows that he, individually or as a fiduciary, or his spouse or minor child residing in his household, has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be substantially affected by the outcome of the proceeding.

We do not hold that the judge was disqualified by anything contained in subsection (b). There is no reason to question his finding that he had no personal bias or prejudice or personal knowledge of any disputed fact within the meaning of subsection (b)(1). Clearly, he had no financial interest in the proceeding or any interest that could be affected by its outcome within the mean-

ing of subsection (b)(4). Subsection (b)(3) might be stretched to cover this situation. As a member of the Supreme Court of West Virginia, he "served in governmental employment" within the meaning of that subsection. From the committee reports and hearings it is apparent that subsection (b)(3) was added to take care of the situation of a judge appointed after service as a "government lawyer." There were express references to lawyers appointed after service in the Department of Justice, in the offices of United States Attorneys or in other federal agencies. Seemingly, no one thought of the kind of situation we face here where a federal judge had former service as a state judge. However, we need not now decide whether, as Chief Justice of West Virginia, he was "in governmental employment" within the meaning of subsection (b)(3), for we conclude that subsection (a) required his recusal.

Subsection (a) of § 455 was designed as a catch-all provision of broader scope than the combined specific disqualification provisions of subsection (b). This is shown by the legislative history.[1] That this is so is also clearly apparent from the waiver provision of 28 U.S.C.A. § 455(e). If a judge is disqualified under one of the specific provisions of subsection (b), he may not accept a waiver of his disqualification by counsel and parties. He may accept such a waiver, however, if the sole basis of his disqualification is the provision in subsection (a) that his impartiality might reasonably be questioned.

■ The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all of the circumstances. As amended in 1974, the statute replaced the old subjective standard with an objective one, and it reversed the old principle embodying a judge's duty to sit when not clearly disqualified. As stated in the House Committee Report:

> Subsection (a) of the amended section 455 contains the general, or catch-all, provision that a judge shall disqualify himself in any proceeding in which "his impartiality might reasonably be questioned." This sets up an objective standard, rather than the subjective standard set forth in the existing statute through use of the phrase "in his opinion". This general standard is designed to promote public confidence in the impartiality of the judicial process by saying, in effect, *if there is a reasonable factual basis for doubting the judge's impartiality*, he should disqualify himself and let another judge preside over the case. The language also has the effect of removing the so-called "duty to sit" which has become a gloss on the existing statute. See *Edwards v. United States*, 334 F.2d 360 [5th Cir. 1964]. Under the interpretation set forth in the *Edwards* case, a judge, faced with a close question on disqualification, was urged to resolve the issue in favor of a "duty to sit". Such a concept has been criticized by legal writers and witnesses at the hearings were unanimously of the opinion that elimination of this "duty to sit" would enhance public confidence in the impartiality of the judicial system.[2]

■ Our task, then, is to determine whether a reasonable person would have had a reasonable basis for doubting the judge's impartiality.[3] In the process of

---

1. See H.R.Rep. No. 93–1453, 93d Cong. 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6351, 6354–55; S.Rep. No. 93–419, 93d Cong., 1st Sess. 5, 7 (1973); Hearings on Judicial Disqualification Before the Subcommittee on Courts, Civil Liberties, and the Administration of Justice of the House Committee on the Judiciary, 93d Cong., 2d Sess. (1974); Hearings on Judicial Disqualification Before the Subcommittee on Improvements in Judicial Machinery of the Senate

Committee on the Judiciary, 93d Cong., 1st Sess. (1973).

2. H.R.Rep. No. 93–1453, 93d Cong., 2d Sess. (1974), *reprinted in* [1974] U.S.Code Cong. & Admin.News, pp. 6351, 6354–55 (emphasis added). Identical language was included in S.Rep. No. 93–419, 93d Cong. 1st Sess. 5 (1973).

3. The facts of this case do not require us to decide "whether the requirement of reasonableness is to be considered from the vantage point

making such a determination, we cannot be influenced by our own faith in the integrity of a particular judge. Congress was concerned with the appearance of impartiality to the general public. Neither our faith nor the imaginings of one highly suspicious of others are relevant. The inquiry begins and ends with a determination whether a reasonable person would have had a reasonable basis for doubting the judge's impartiality.

For many years a federal judge has been prohibited from sitting to hear or determine an appeal in a case or issue tried by him. 28 U.S.C.A. § 47. To say the least, it would be unbecoming for a judge to sit in a United States Court of Appeals to participate in the determination of the correctness, propriety and appropriateness of what he did in the trial of the case. After rendering decisions, some judges remain open minded, and some are unreluctant to confess previous error, but a reasonable person has a reasonable basis to question the impartiality of a judge who sits in a United States Court of Appeals to review his own decision as a trial judge. Earlier contrary practice created some furor. In 1889 Walter B. Hill, addressing the American Bar Association, said:

> "Such an appeal is not from Phillip drunk to Phillip sober, but from Phillip sober to Phillip intoxicated with the vanity of a matured opinion and doubtless also a published decision." [4]

Literally, § 47 has no application to Judge Haden in this case, for he was not sitting on appeals. The same principle is involved, however. Federal district courts are not ordinarily thought "superior" to the highest courts of the states, and they are not generally competent to review what such state courts do, but in federal habeas corpus cases the federal district judges do sit in review of the proceedings in the state courts. At least since *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), the federal district judge must review the state court proceedings, accepting state court fact findings only when they are properly supported after fair hearings. Here he must grant relief and order release of the prisoner if he finds that in the state courts, error of federal constitutional dimension was committed. In no substantive sense can that process be readily distinguished, in this context, from appellate review of decisions of trial courts.

We have no doubt that Judge Haden had no specific recollection of this case, or of his participation in its decision by the Supreme Court of West Virginia. It was only from the timing that he knew that he probably had participated in the state court decision, and he properly disclosed that fact. But whether he recalled the case or the reasoning process which led him and his brothers of the Supreme Court of West Virginia to the decision they rendered, he did participate in the state court decision, and the federal habeas proceeding called for a review of the state court proceedings to determine whether or not the commitment of Rice was in violation of some constitutional right. In this case, Phillip was not drunk on either occasion, but it still was an appeal from Phillip to Phillip, and a reasonable person would have a reasonable basis for questioning Phillip's impartiality on the appeal.

West Virginia contends, however, that impartiality is disqualifying only if it arose out of an "extra-judicial source." [5] That doctrine was grounded in substantial part on the "personal bias or prejudice" language of other predecessor statutes, and there may be some question about the extent to which it applies to the objective standard created by the 1974 amendment to

---

of the litigant who has a stake in the outcome or from that of the uninvolved observer." Note, 45 Fordham L.Rev. 139, *supra* note 14, at 148–52. This question appears to have provoked a split of opinion in the Fifth Circuit, see *Parrish v. Board of Comm'rs*, 524 F.2d 98 (5th Cir. 1975) (en banc), cert. denied, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976).

4. 12 ABA Rep. 289, 307, quoted in 13 Wright, Miller and Cooper Federal Practice and Procedure 360, § 3545.

5. *See United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 16 L.Ed.2d 778.

§ 455. Doubtless it is still true that neither an appellate nor a trial judge is disqualified from sitting in a case because of an earlier decision, in which he participated, of a similar case involving other parties. Nor is he ordinarily disqualified from retrying or rehearing a case that he has tried or heard before. New sets of judges are not required each time similar contentions are asserted. The principle that the source of the bias or partiality must be extra-judicial, however, has always had limitations. It simply gave way completely in the face of the principle embodied in § 47 that a judge may not sit on appeal in review of his decisions as a trial judge. If there is actual want of impartiality there, its source was clearly not extra-judicial, but the likelihood of the presence of partiality is sufficiently great to support a rule of absolute disqualification. Judge Haden's prior participation in the case, of course, was entirely judicial and not personal, but as a district judge he was reviewing the federal constitutional validity of what he previously had approved as a member of the Supreme Court of West Virginia. In that situation, there is a basis for a reasonable person to form a reasonable basis for questioning his impartiality and his capacity to provide the independent federal review that is requisite. That is enough to require disqualification under § 455(a), despite our confidence that, subjectively, Judge Haden was conscious of no want of impartiality.

*VACATED AND REMANDED FOR FURTHER PROCEEDINGS.*