**Christian Jacques DAVID,
Petitioner-Appellant,**

v.

**ATTORNEY GENERAL OF the UNITED
STATES, Respondent-Appellee.**

**No. 81–2318.**

United States Court of Appeals,
Seventh Circuit.

Argued June 2, 1982.

Decided Feb. 8, 1983.

---

Julie C. Reynolds, Jenner & Block, Chicago, Ill., for petitioner-appellant.

Murray R. Stein, Assoc. Dir., Crim. Div., Justice Dept., Washington, D.C., for respondent-appellee.

Before WOOD, Circuit Judge, ESCHBACH, Circuit Judge, and CAMPBELL,* Senior District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

■ Christian Jacques David (David) appeals the district court's denial of his petition for writ of habeas corpus. David is in federal custody serving a twenty year sentence as the result of his pleading guilty to drug trafficking charges in the Eastern District of New York in 1972. During his incarceration, the Republic of France filed a request for his extradition on charges of willful homicide and attempted willful homicide of police officers. On December 12, 1973 an extradition complaint was filed by the United States Attorney in the United States District Court for the Eastern District of Illinois.[1] David's primary defense was that his presence in the United States was not voluntary, but that he was kidnapped from Brazil by agents of the United States and thus the court lacked jurisdiction over him, citing *United States*

v. *Toscanino,* 500 F.2d 267 (2d Cir.1974). Prior to the extradition hearing a discovery dispute arose and in resolving it Judge Foreman rejected the *Toscanino* defense as a matter of law, *In Re David,* 390 F.Supp. 521 (E.D.Ill.1975). The extradition hearing was originally scheduled for February 7, 1975 but was continued until February 28, 1975 at the request of David's counsel. At the hearing on February 28, 1975 defense counsel again sought a continuance but the district judge denied the request and the hearing proceeded. Subsequently, the district court entered an order concluding that David was extraditable under the French-American Extradition Treaty, *In Re David,* 395 F.Supp. 803 (E.D.Ill.1975). By way of appeal,[2] David filed a petition for writ of habeas corpus which was denied by Judge Foreman on July 21, 1976. Some additional proceedings were necessary to resolve David's motion to appeal *in forma pauperis* and his motion to stay transfer pending appeal. This appeal was eventually filed in 1981.

David raises three arguments on appeal: (1) Abduction and torture by United States agents constitutes a jurisdictional defense to an extradition proceeding; (2) The district court's refusal to continue the extradition hearing violated David's constitutional right to effective assistance of counsel; (3) Judge Foreman violated 28 U.S.C. § 455(a) by hearing the petition for writ of habeas corpus since he had presided at the extradition hearing.

■ Under present law, the scope of habeas corpus review of an extradition proceeding is limited. The court is limited to determining whether the extradition magistrate had jurisdiction, whether the offenses charged are within the treaty, and whether there was probable cause to support the charges, *Fernandez v. Phillips,* 268 U.S. 311,

* The Honorable William J. Campbell, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. In 1979, the Eastern District of Illinois was redefined and renamed the Southern District of Illinois.

2. There is no direct appeal for either the government or the fugitive from an extradition magistrate's decision to certify the matter to the Secretary of State, *see Ornelas v. Ruiz,* 161 U.S. 502, 508, 16 S.Ct. 689, 691, 40 L.Ed. 787 (1896).

45 S.Ct. 541, 69 L.Ed. 970 (1925); *In re Assarsson,* 635 F.2d 1237 (7th Cir.1980), cert. den. 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981); *Eain v. Wilkes,* 641 F.2d 504 (7th Cir.1981), cert. den. 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981). The first issue raised by David clearly falls within those limitations. He has alleged that in 1972 he was arrested by Brazilian officials acting as or with agents of the United States. He claims that he was held captive for a month, subjected to barbarous torture, and then forcibly transported to New York where he was arrested by federal agents. Soon thereafter he pled guilty to drug trafficking charges and was sentenced to twenty years incarceration. His allegations are very similar to those made by the defendant in *Toscanino, supra,* 500 F.2d 267. In that case, Toscanino claimed he had been abducted in Uruguay, tortured and involuntarily brought to the United States to stand trial on drug trafficking charges. At trial he was found guilty and on appeal he argued that since the district court unlawfully obtained jurisdiction over him the proceedings were void. The Second Circuit concluded that the government had violated the accused's constitutional right to due process and stated:

[W]e view due process as now requiring a court to divest itself of jurisdiction over the person of a defendant where it has been acquired as the result of the government's deliberate, unnecessary and unreasonable invasion of the accused's constitutional rights. 500 F.2d at 275.

The court relied on its supervisory power over the administration of criminal justice in the district courts within its jurisdiction and premised its decision on the principle

that the government should be denied the right to exploit its own illegal conduct, citing *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Thus, the *Toscanino* holding was intended to act as a deterrent to illegal conduct on the part of law enforcement officials, much like the well-known exclusionary rule, *see Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) cited in *Toscanino,* 500 F.2d at 273. David argues that since he was brought into the United States in the same manner as Toscanino, the extradition magistrate was required to divest himself of jurisdiction over the extradition proceeding.

Even assuming that this Court accepted the *Toscanino* principle in a federal criminal proceeding (which is still an open question, *see, United States v. Marzano,* 537 F.2d 257, 271–272 (7th Cir.1976)), we conclude that it is clearly inapplicable in the circumstances of this case. As noted previously, *Toscanino* requires the court to divest itself of jurisdiction in order to deprive the government of the fruits of its illegal conduct. However, David is asking us to penalize France for the allegedly illegal conduct of American agents. To require the extradition magistrate to divest himself of jurisdiction would not serve to deter illegal conduct on the part of United States' officials since the fruit of that alleged conduct, i.e. the guilty plea and subsequent sentence, would be unaffected.[3] Based on similar reasoning, the Second Circuit has held that the exclusionary rule is inapplicable in extradition proceedings, *Simmons v. Braun,* 627 F.2d 635 (2d Cir.1980); *see also, Magisano v. Locke,* 545 F.2d 1228 (9th Cir.1976).

---

**3.** We certainly have no power to rule on the validity of the *Toscanino* defense with regard to David's guilty plea since we do not have supervisory authority over the criminal proceedings in the Eastern District of New York. Furthermore, the Second Circuit has not determined whether *Toscanino* can be applied retroactively, as it would have to be in this case, *see Lujan v. Gengler,* 510 F.2d 62, 68 fn. 10 (2d Cir.1975). We also note that there is some doubt whether the *Toscanino* defense could be used to collaterally attack a guilty plea since

When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

We note that David has suggested that France was indirectly involved in his kidnapping in that it was aware of the plan and intended to arrange a trade of prisoners with the United States upon his arrival here. Thus, he argues, France will enjoy the fruit of the illegal conduct (especially in view of the fact that France had no extradition treaty with Brazil). David's allegations, however, do not implicate France in any unconstitutional conduct within our jurisdiction. Furthermore, assuming *arguendo* the commission of any impropriety by French officials elsewhere, we are not the proper authority to apply sanctions. That matter would be for the French courts (or other authorities) to consider, *see Jhirad v. Ferrandina,* 536 F.2d 478 (2d Cir.), *cert. den.* 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98, *reh. den.* 429 U.S. 988, 97 S.Ct. 511, 50 L.Ed.2d 600 (1976); *Rosado v. Civiletti,* 621 F.2d 1179 (2d Cir.), *cert. den.* 449 U.S. 856, 101 S.Ct. 153, 66 L.Ed.2d 70, *reh. den.* 449 U.S. 1027, 101 S.Ct. 597, 66 L.Ed.2d 489 (1980). Therefore, we conclude that the *Toscanino* defense is unavailable to the petitioner in this case.

Petitioner contends that Judge Foreman's refusal to continue the extradition hearing violated his constitutional right to the effective assistance of counsel. The government contends that this issue falls outside the scope of review afforded by a habeas corpus petition arising from an extradition proceeding, *see discussion, supra.* However, there is some authority for the suggestion that the limited scope of review applies only to the extradition ruling and not to procedural issues, *see e.g. Garcia-Guillern v. United States,* 450 F.2d 1189, 1191 (5th Cir. 1971). ("[H]abeas corpus review *of the findings* of a court which conducted an extradition hearing is extremely limited.") Since it appears settled that aliens are entitled to some procedural due process rights in an extradition hearing, *see, Grin v. Shine,* 187 U.S. 181, 184, 23 S.Ct. 98, 99, 47 L.Ed. 130 (1902); *Caltagirone v. Grant,* 629 F.2d 739, 748 fn. 19 (2d Cir.1980); *Rosado v.*

*Civiletti, supra,* 621 F.2d at 1195, a habeas corpus petition would seem to be the appropriate means of enforcing those rights. We need not resolve this issue, however, because we conclude that the denial of the continuance did not violate petitioner's constitutional rights.

An analysis of whether a court's refusal to grant a continuance denied a party the effective assistance of counsel requires a review of the factual background, especially the reasons presented to the court at the time of the request, *see, Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964). Petitioner moved for a continuance on the morning of the extradition hearing on the ground that counsel from New York had been retained and therefore David's two *pro bono* counsel did not prepare for the hearing (although they were present). We note that neither of the *pro bono* counsel had filed a motion to withdraw nor had retained counsel failed a notice of appearance. Additionally, the extradition proceedings had been pending for well over a year and had been continued once before at request of David's counsel. David's *pro bono* counsel had represented him during that period and had obtained and reviewed much of the documentary evidence involved. The request for the continuance was reiterated during the extradition hearing on the basis that counsel were unable to defend David by way of informed cross-examination or rebuttal. However, an extradition hearing is of the character of a preliminary hearing and is not to be converted into a full-dress trial,[4] *see Benson v. McMahon,* 127 U.S. 457, 463, 85 S.Ct. 1240, 1243, 32 L.Ed. 234 (1888); *Merino v. Marshal,* 326 F.2d 5, 12 (9th Cir.), *cert. den.* 377 U.S. 997, 84 S.Ct. 1922, 12 L.Ed.2d 1046, *reh. den.* 379 U.S. 872, 85 S.Ct. 20, 13 L.Ed.2d 79 (1964); *Sayne v. Shipley,* 418 F.2d 679, 685 (5th Cir.1969); *Peroff v. Hylton,* 563 F.2d 1099, 1102 (4th Cir.1977). Thus, the amount of preparation necessary to provide a fair

---

**4.** It has even been suggested that there is no right to the confrontation and cross-examination of witnesses in extradition hearings, *see,*

*Simmons v. Braun,* 627 F.2d 635, 636 (2d Cir. 1980).

hearing must be considered accordingly. We note that Judge Foreman recessed the hearing twice to permit counsel to review certain documents and to interview the witnesses. The government called only two witnesses, both fingerprint experts, who testified solely on the issue of identity. Judge Foreman granted defense counsel until March 10, 1975 to determine whether they intended to introduce any evidence to contradict the identification testimony. In view of all the circumstances, we conclude that the denial of the continuance did not contravene David's due process rights.

■ David's final contention is that since Judge Foreman presided at the extradition hearing, he violated 28 U.S.C. § 455(a)[5] by hearing the petition for writ of habeas corpus. Petitioner contends that, having heard the underlying action, Judge Foreman's impartiality might reasonably be questioned and therefore he was required to recuse himself,[6] citing, *Rice v. McKenzie,* 581 F.2d 1114 (4th Cir.1978). The government's response is to argue that this issue is not within the scope of review of a habeas corpus petition arising from an extradition proceeding. This contention, however, is without merit. Petitioner's argument is addressed to the proceedings involving the habeas petition, not to any issue arising directly from the extradition hearing. If we were to accept David's position the remedy would not affect the extradition ruling but would simply involve a remand to the district court for reconsideration of the habeas petition by a different judge. Therefore, this issue is clearly within our scope of review.

■ David contends that § 455(a) requires an objective standard of impartiality, and therefore, if a reasonable person would doubt the judge's impartiality, the judge must disqualify himself. He relies on *Rice v. McKenzie, supra,* 581 F.2d 1114, for the proposition that under the objective standard a judge should not rule on a collateral attack against a decision made by him (or her). However, Rule 4(a) of the Rules Governing § 2255 Proceedings for United States District Courts provides that a habeas petition brought under that section

> shall be presented promptly to the judge of the district court who presided at the movant's trial and sentenced him, or, if the judge who imposed sentence was not the trial judge, then it shall go to the judge who was in charge of that part of the proceedings being attacked by the movant.

While the case *sub judice* involves a petition brought under 28 U.S.C. § 2241 and therefore this rule is not controlling, it is certainly persuasive evidence that there was no *per se* impropriety in Judge Foreman's actions. David quotes *Rice* for the proposition that when a judge sits in review of his own decisions,

> [s]uch an appeal is not from Phillip drunk to Phillip sober, but from Phillip sober to Phillip intoxicated with the vanity of a matured opinion and doubtless also a published decision. 581 F.2d at 1117.

While this statement does have some appeal, we cannot adopt it without reservations because to do so would create havoc in the judicial system. There are many cases in which a district judge is reversed (or has an order vacated) and the case is nevertheless remanded to that judge for further proceedings.[7] Acceptance of the *Rice* reasoning would mean that the case was being sent back to "Phillip drunk" as well as "Phillip enraged" by the appellate court's meddling. We must assume that a judge can determine whether he or she is qualified to preside impartially in that type of

---

**5.** 28 U.S.C. § 455(a) provides

Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

**6.** We note that petitioner has not alleged any partiality as a factual matter and the record contains no evidence of any.

**7.** Rule 18 of the Rules of the United States Court of Appeals for the Seventh Circuit requires reassignment only when a case is remanded for new trial (or when the appellate court directs reassignment).

situation and this assumption must also extend to cases involving collateral attacks.[8] We do not find that the case *SCA Services Inc. v. Morgan,* 557 F.2d 110 (7th Cir.1977), conflicts with our conclusion here. In that case disqualification was required because of a finding that the presiding judge's brother could have a substantial financial interest in the litigation. The existence of such a pecuniary interest does create the appearance of partiality, however, a mere allegation of hubris does not. Accordingly, we find no violation of 28 U.S.C. § 455(a) in this case.

The order of the district court is hereby affirmed.

---

8. Disqualification of judges on direct appeals is addressed by 28 U.S.C. § 47 which provides: "No judge shall hear or determine an appeal from the decision of a case or issue tried by him."