**Rogelio MONTEMAYOR SEGUY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV.A. H–04–3014.**

United States District Court, S.D. Texas.

Aug. 2, 2004.

Mike DeGeurin, Jr., Foreman Degeurin et al, Houston, TX, for Plaintiff.

Donald DeGabrielle, US Attorneys Office, Houston, TX, for Defendant.

Opinion on Reassignment

HUGHES, District Judge.

1. *Introduction.*

After this court ruled that the government could extradite him, the accused petitioned for a writ of habeas corpus. It was assigned to another judge. That judge transferred the case to the judge who had heard the application for extradition. The accused objects to the reassignment. The transfer stands.

2. *Background.*

On July 23, 2004, Judge Lynn N. Hughes held that the United States of America could extradite Rogelio Montemayor Seguy, the ex-head of Pemex, to the Republic of Mexico to face the Mexican equivalent of embezzlement and diversion of funds by a public official. Three days later, Montemayor petitioned for a writ of habeas corpus.

Habeas petitions begin new actions. The case, therefore, was randomly assigned among the judges of the Houston Division, landing on the docket of Judge Nancy F. Atlas. The civil action cover sheet filed with the petition disclosed that it was related to the extradition. Judges Atlas and Hughes discussed the actions, and they agreed that she would transfer it to him.

Montemayor objects to the transfer, saying that reassignment in this particular type of case is irregular.

3. *Claim.*

Montemayor's petition speaks of an "appearance of impropriety," but when questioned by the court, his counsel disclaimed that the objection contained any aspect of partiality or other ground for suggesting that the judge recuse himself. The objection is about procedural structure. Essen-

tially, he simply wants a judge other than the one whom heard the application to extradite to hear the petition for a writ of habeas corpus.

### 4. History.

It is not antithetical to this country's historical sense of justice for judges to review their own work. Early in the federal republic, when supreme court justices toured as trial judges, the trial court was comprised of two justices and a district judge. When a case was appealed, the justice sat with his colleagues to review the decision from the trial court. *See* Judiciary Act of 1789, § 4; 3 Albert J. Beveridge, *The Life of John Marshall* 54–60 (1919); 1 Julius Goebel, Jr., *History of the Supreme Court of the United States* 472–73, 501 (Paul A. Freund ed., 1971).

During the Republic of Texas, trial judges *were* justices of the supreme court, the only court of appeal, reviewing their own cases on appeal. Rep. Tex. Const. art. IV, §§ 7, 8 (1836).

### 5. Federal.

Eventually, Congress barred judges from hearing on appeal cases that they had decided at trial. This precludes a district judge from sitting by designation on an appeal from his judgment and presumably bars a supreme court justice who hear a case on circuit from hearing it again on appeal. 28 U.S.C. § 216 (1940) (current version at 28 U.S.C. § 47 (2004)).

In both civil and criminal cases, the rules are replete with requirements that a ground for appeal must have been first presented to the trial court. Motions for new trial and reconsideration are two common instances. *See* FED. R. CIV. P. 59, 60. With few exceptions, courts of appeals are obliged to remand cases to the judge who presided at trial. *See* Jack B. Weinstein, *The Limited Power of the Federal Courts of Appeals to Order a Case Reassigned to Another District Judge*, 120 F.R.D. 267, 277–278 (1988); *David v. Attorney Gen. of the United States*, 699 F.2d 411, 416 (7th Cir.1983).

Habeas petitions, however, are not appeals; they are requests for an extraordinary intervention in a process, not an ordinary check within it. Under the federal statutory scheme, there are three types of habeas petitions. First, there are collateral attacks on federal judgments. *See* 28 U.S.C. § 2255. Second, there are collateral attacks on state judgments. *See* 28 U.S.C. § 2254. And third, there is everything else. *See* 28 U.S.C. § 2241. Because a decision that an extradition is supported by reasonable facts and is covered by a treaty is not a criminal action, extraditions fall into the residual category. The scope of the petition is limited; the prisoner may challenge only the legality of his detention. The habeas process is a search for a gross injustice, usually a want of authority. *See* Leonard W. Levy, *Origins of the Bill of Rights* 44–67 (1999).

Originally, a judge could hear the habeas petition about a case he had heard or another judge could hear it. While some judges whined that it was "unseemly" for judges to evaluate their colleagues, judges routinely step into cases that have been completed or are in progress when a colleague requires help, recuses, or discovers that cases are related. When modification of another judge's decision is what law and reason dictate, the judge will do it; judges are in office to do the work required—not to be buddies. *See Carvell v. United States*, 173 F.2d 348, 349 (4th Cir.1949) (Parker, J.). When Congress reorganized the habeas rules in 1948, it authorized habeas petitions to be assigned to the judge who heard the trial. For the last one-half century, judges have heard the habeas petitions of prisoners whom they

tried. *See* 28 U.S.C. · § 2255; Fed. R.Crim.P. 4(a).

Because they do not have a simple pattern like criminal convictions, the residual category does not have an assignment provision, allowing those petitions to be handled in the general system. *See* 28 U.S.C. § 2241. The practice under the habeas petitions for federal convictions is the most analogous to an extradition—a compelling parallel.

### 6. *Routine.*

Judges commonly transfer cases among themselves. They volunteer to help judges who are in a scheduling bind. Most commonly they transfer cases when the judges conclude that they have cases that are related to each other. *See* Local Rule 5.3. Whether these are viewed as transfers for general efficiency or court convenience, the judges collectively—by the whole or in pairs—may shift cases within the district without affecting legitimate interests of the litigants. *See* 28 U.S.C. § 137; General Order 2004–1 of the U.S. Dist. Ct. of the South. Dist. of Tex., 21(B) (Dec. 30, 2003).

### 7. *Efficiency.*

Put in its best light, the petitioner's claim could be phrased: While it is efficient for the trial judge to hear the petition because it allows a prompt review by a judge familiar with the case, that efficiency sacrifices the safeguard of an independent look, reducing the whole process to a subconstitutional level of thoroughness and reliability. Even then, he would be wrong. *See United States v. Edwards,* 152 F.Supp. 179, 182–183 (D.D.C.1957).

First, a judge who has heard the entire proceeding of a criminal case through conviction—a conviction occasionally from a trial to the bench—still retains the ability to take a hard second look at the propriety of his decisions. It is *decisions* in the plural because a case is not made of the final binary choice of guilty or not guilty; it is made of hundreds of minor and major rulings on evidence, instructions, and other components of American process.

Second, initial review by the trial court is the dominate practice in both civil and criminal matters. If this part of an extradition is procedurally deficient, then the better part of all trial process is irregular.

Third, an extradition is not a trial. The judicial function is far more confined than in a criminal trial, but even in a criminal trial the petition returns to the trial court. Prompt review by the judge who is most familiar with the case fits into the peculiar nature of the statutory, intermediate review of an executive decision. Remember, it was constitutional to have extraditions with no judicial participation at all. That is how the Founding generation did it. *See* Jacques Semmelman, *Federal Courts, the Constitution, and the Role of Non-Inquiry in International Extradition Proceedings,* 76 Cornell L.Rev. 1198 (1991).

In this instance, the economies for the parties and the court far outweigh an abstract benefit of shift of personnel on the bench. The extradition has been in progress since May 2002. Once it reached this court, about seven months ago, it has held several conferences with counsel and ordered generous discovery.

Montemayor mentions a case where the district judge failed to ascertain at the initial hearing or on habeas review that the government had failed to disclose all the documents reasonably related to the extradition as ordered. Independent review by the court of appeals failed to catch that failure, contradicting the proposition that new people will reach better results. The defendant was extradited, and then he was acquitted through the competence of the

foreign tribunal. Strangely, after it was all over, that court of appeals reopened the case on its own motion, appointed a special master, took evidence, and decided to vacate the extradition. While it was engaging in that empty gesture of doubtful legitimacy, it missed an opportunity to hold the government accountable. *See Demjanjuk v. Petrovsky,* 10 F.3d 338 (6th Cir.1993).

**8. Conclusion.**

Montemayor's objection is without foundation in fact or law, and the trial judge who presided over the extradition hearing will review the petition.

### Order

Rogelio Montemayor Seguy's objection to the reassignment of his petition for a writ of habeas corpus to Judge Lynn N. Hughes is denied.