Carmine ESPOSITO, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 90–2332.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 26, 1991.

Decided July 3, 1991.

Rehearing and Rehearing En Banc
Denied Aug. 8, 1991.

Robert C. Meltzer, Chicago, for petitioner.

Ira H. Raphaelson, Asst. U.S. Atty., Office of U.S. Atty., Crim. Div., Chicago, Ill., Alison R. Drucker, Lori L. Scialabba, David J. Kline, Charles E. Pazar, Robert Kendall, Jr., Dept. of Justice, Office of Immigration Litigation, Richard L. Thornburg, U.S. Atty. Gen., Office of U.S. Atty. Gen., Washington, D.C., A.D. Moyer, Michael L. Harper, I.N.S., Chicago, Ill., for respondent.

Before FLAUM, RIPPLE, and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Carmine Esposito entered the United States using a false passport in April 1984. The use of fraudulent documents to gain entry to the United States is unlawful, and constitutes grounds for exclusion and deportation. In this appeal, Esposito raises several challenges to the INS's attempt to deport him.

### I.

Individuals who enter the United States "by fraud, or willful[ ] misrepresent[ation] [of] a material fact," are subject to exclusion, 8 U.S.C. § 1182(a)(19), and deportation, 8 U.S.C. § 1251(a)(1). Mr. Esposito is one such individual. He presented immigration officials at the border with an Italian passport bearing his picture, but someone else's name. Esposito admitted at his deportation hearing that he paid 700,000 lire, or roughly $1,000, for the false passport. He compounded his fraud by using a false name when he completed an I-94 immigration form at his point of entry.[1] Upon settling in the United States, Esposito assumed a different false name—"John Michael Phelan"—under which he lived for three years, until a run-in with authorities detailed below.

Soon after the INS was alerted to Esposito's fraud, it sought to have him deported. An immigration judge found Esposito excludable and deportable as a consequence of his violation of § 1182(a)(19), as

---

1. In the face of this uncontroverted evidence, Esposito maintains that he did not enter the United States with a knowing intent to deceive, and that he is thus not excludable under § 1182(a)(19). This argument need not detain us long. It is crystal clear that an individual who knowingly enters the United States on a false passport has engaged in willful fraud and misrepresentation of material fact. There is simply no lawful gloss that can be placed on Esposito's actions.

did the Board of Immigration Appeals (BIA or Board).[2]

## II.

On appeal, Esposito argues that the BIA should have granted his request for a waiver of exclusion and deportation. He points first to 8 U.S.C. § 1182(i), which provides that "The Attorney General may, in his discretion," waive exclusion of an individual who has entered the country on the basis of fraud or willful misrepresentation of material fact "in the case of an alien who is the spouse, parent, or son or daughter of a United States citizen...."

Esposito meets the eligibility requirements of § 1182(i), as his spouse is a citizen of the United States. The BIA, acting as the Attorney General's designee, nevertheless exercised its discretion not to afford Esposito a waiver of exclusion. Esposito claims that this decision constituted an abuse of discretion. He also contends that the Board erred in considering certain damaging evidence in denying his waiver request. Resolution of Esposito's claims requires that we take a closer look at his circumstances and the Board's decision.

The Board identified a number of factors that it said supported its decision not to exercise its discretion in Esposito's favor. First, it pointed to three *in absentia* criminal convictions entered against Esposito in Italy for criminal association, forgery, and unlawful possession of firearms. Esposito was convicted of the first two in 1984 shortly after he left Italy and came to the United States, and the third in 1986, also while living in this country. The record suggests that a Naples police investigation which culminated in the first two convictions prompted Esposito's decision to leave Italy in 1984 and gain entry to the United States by fraud.

The Board also gave weight to the Italian government's efforts to have Esposito extradited in 1987. In March of that year, Esposito was arrested in the United States pursuant to an Italian extradition request. The request indicated that Esposito had been indicted in Italy on 12 counts of murder and one count of attempted murder. It further listed Esposito's *in absentia* convictions as grounds for extradition. A magistrate found that Italian authorities had presented evidence sufficient to establish probable cause to believe that Esposito had committed the offenses in question, and the district court affirmed that finding in a habeas corpus proceeding. *See Esposito v. Adams*, 700 F.Supp. 1470 (N.D.Ill. 1988). Soon thereafter, as a result of certain procedural complications in Italy which remain unexplained, the Italian government withdrew its extradition request. The charges against Esposito, however, are still pending in that country.

Esposito objects to the introduction of this evidence against him. He contends that it was fundamentally unfair for the BIA to consider the *in absentia* convictions, pending charges, and extradition request in exercising its discretion to deny his application for a § 1182(i) waiver. *See Bustos–Torres v. INS*, 898 F.2d 1053, 1055 (5th Cir.1990) (use of evidence in deportation proceedings must be "fundamentally fair" so as not to deprive aliens of due process of law); *Marlowe v. INS*, 457 F.2d 1314 (9th Cir.1972) (same). Specifically, Esposito claims that the evidence suggesting his criminal involvement "is shrouded with conflict and unreliability." Petitioner's Brief at 41. He disputes the correctness of his *in absentia* convictions, challenging the credibility of witnesses who testified against him, and in more wholesale fashion, the fundamental fairness of the Italian criminal justice system which generated the convictions. He further argues that *in absentia* convictions are jurisdictionally suspect and may not be used as grounds to exclude an alien from the United States. *See Matter of Piraino*, 12 I & N Dec. 508 (BIA 1967); *Matter of F—*, 8 I & N Dec. 469 (BIA 1959). Finally, Esposito claims that it was fundamentally unfair for the Board to consider the pending murder charges as a mark against him.

---

**2.** The decisions of the Immigration Judge and the Board discuss a number of issues and grounds for deportation that we need not touch upon here. *See infra* note 3.

We find these objections to be without merit. As to Esposito's *in absentia* convictions, we note first that the BIA did not predicate his exclusion and deportation upon those convictions, as he suggests. Rather, his exclusion was based on his use of fraudulent immigration documents, and the Board merely considered his *in absentia* convictions in deciding whether to grant him a waiver of exclusion and deportation. Esposito's reliance on Board decisions which cast doubt on the validity of *in absentia* convictions as statutory grounds for deportation is thus misplaced. The question remains whether *in absentia* convictions can be considered by the Board for the more limited purpose of deciding whether to exercise its discretion to waive exclusion and deportation.

Esposito does not contest the relevance to the waiver calculus of evidence suggesting an alien's past involvement in criminal activity. He argues, however, that convictions obtained *in absentia* are constitutionally infirm and cannot be considered by the Board as proof that he committed the crimes with which he was charged. The Board takes precisely the opposite view: it contends that "[a] foreign court's conviction is conclusive for immigration purposes with regard to whether an alien is guilty of the offense for which he has been convicted." *In re Esposito*, No. A27 895 148, slip op. at 8 (June 14, 1990); *see also Matter of McNaughton*, 16 I & N Dec. 569, 571 (BIA 1978) ("It is not our place to retry [the respondent's guilt or innocence]. The respondent must address any attack on the merits of the conviction to the courts with criminal jurisdiction."). In the alternative, however, the Board suggests that Esposito's convictions are probative of something less than guilt, "which affect[s]," though obviously not to the same extent as would proof of guilt itself, "the respondent's ability to meet his burden of demonstrating that he warrants a favorable exercise of discretion." *In re Esposito*, slip op. at 9. Without expressing a view as to the Board's first argument, we agree with its fallback position. Even if Esposito were correct that *in absentia* convictions ought not to be treated as evidence of guilt, they

may certainly stand for something less: at the very least, *in absentia* convictions properly constitute probable cause to believe that the petitioner is guilty of the crimes in question. *Cf.* Restatement (Third) of the Foreign Relations Law of the United States § 475 comment h (1987) (under United States practice, an *in absentia* conviction "may be treated as if it were an indictment" for the purposes of extradition). We do not believe that *in absentia* convictions are, solely by virtue of their *in absentia* nature, so fundamentally infirm as to preclude the Board from considering them for this limited purpose. And neither, it appears, does Esposito. In the deportation proceedings below Esposito himself took the position that his convictions may be regarded "as a charge tantamount to an arrest warrant." Respondent's Answer to Service Brief In Support of Amended Charge of Deportability and Motion to Terminate, App.R. at 1148 (citing *Ex parte Fudera*, 162 F. 591 (2nd Cir. 1908)).

That is not to say that *in absentia* convictions are in all circumstances beyond reproach; our presumption that they are probative of probable cause is a rebuttable one. In the individual case, a petitioner may present evidence that calls into question the fundamental fairness of the proceedings which generated an *in absentia* conviction, and if that evidence is sufficiently compelling, the Board would be precluded from giving it any weight at all. *Cf. Matter of Burt*, 737 F.2d 1477, 1487 (7th Cir.1984) (in habeas corpus review of extradition requests this court will consider "exceptional constitutional limitations as may exist because of particularly attrocious [sic] procedures or punishments employed by the foreign jurisdiction"); *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 928 (2d Cir.1974) (quoting *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960) (courts may decline to extradite an individual on the ground of an *in absentia* conviction where he "would be subject to procedures or punishment [ ] an-

tipathetic to a federal court's sense of decency")).

Esposito tenders just such a fundamental fairness challenge to the Board's consideration of his own *in absentia* convictions. The burden, of course, is on him to point to exceptional procedural infirmities in the proceedings leading to his convictions, and he has failed to do so. Esposito was represented by counsel during his trial *in absentia*, as well as on appeal of his convictions in an intermediate appellate court and the Italian Supreme Court of Cassation. His trial counsel was able to present witnesses, cross-examine the government's witnesses, and make arguments before the court. On appeal, the Italian courts, whose decisions we have reviewed, appear to have engaged in a careful review of the evidence against Esposito. Esposito's resourceful lawyers, in fact, managed to get his sentence reduced on appeal. Esposito has not countered this evidence with any significant evidence of his own suggesting that the Italian criminal justice system is so lacking in due process protections that the BIA ought not to have considered Esposito's *in absentia* convictions in the waiver calculus. *See Esposito v. Adams*, 700 F.Supp. at 1481 (*In absentia* legal proceedings against Esposito "were far from lacking" the rudiments of due process).

Esposito also devotes considerable attention in his brief on appeal to the particulars of the case made against him *in absentia*. He attacks the credibility of the witnesses who testified against him and questions the sufficiency of the evidence supporting his convictions. While we are receptive to claims that Esposito has not been afforded the rudiments of due process, we refuse to retry the particulars of the case against him. This court is neither capable of nor inclined to undertake such efforts. "To hold otherwise would entail disrespect for the judgments of [foreign] sovereign[s], and thus undermine the principle of international comity. More significantly, such collateral attacks, as a practical matter could not reasonably provide a fair forum for ascertaining the [validity of the convic-

tion]." *Chiaramonte v. INS*, 626 F.2d 1093, 1098 (2d Cir.1980).

Esposito's attack on the Board's consideration of the charges pending against him in Italy and the extradition proceedings spawned by those charges is no more convincing. After reviewing evidence presented in person by an Italian magistrate, both a U.S. magistrate and the district court found that there existed probable cause to believe that Esposito had committed the murders with which he was charged. We agree with Esposito that a probable cause determination is a far cry from a declaration of guilt, but it does indeed indicate that reasonable minds suspect that he is guilty of the crimes charged. As we suggest above, there is nothing wrong with the Board considering, in the exercise of its waiver discretion, the *possibility* that Esposito has engaged in criminal activity. Esposito claims that the outstanding charges should not have been considered because the judicial process that generated them was lacking in fundamental fairness, but other than dispute the strength of the evidence against him, he makes no arguments to support this claim.

Having concluded that the Board did not err in *considering* the above-detailed evidence in its evaluation of Esposito's waiver application, we now turn to the question of whether the Board abused its discretion in *relying* upon that evidence to deny his waiver request under § 1182(i). We will uphold the Board's exercise of its statutorily-mandated discretion unless it was " 'without rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.' " *Patel v. INS*, 811 F.2d 377, 382 (7th Cir.1987) (quoting *Achacoso–Sanchez v. INS*, 779 F.2d 1260, 1265 (7th Cir.1985)). In support of his waiver application, Esposito points to the hardship that deportation would work upon his family. Esposito is married and has four children; he notes that deportation would require him to sever his family's ties to relatives and friends and interrupt his children's education. Esposito also touts the

fact that he has never been charged with a crime in the United States, that he is a religious man, and that he has been an upstanding, hardworking businessman since his arrival in this country. While all this may be true, the Board, in our view, did not abuse its discretion in finding that the evidence against Esposito outweighed these factors in his favor. Esposito's *in absentia* convictions and the murder charges currently pending against him provide probable cause to believe that he has engaged in violent criminal activity in Italy. The Board did not act arbitrarily or irrationally in finding this fact sufficiently compelling to dictate denial of his waiver request.

### III.

■ Esposito's second argument for waiver of deportation is predicated upon 8 U.S.C. § 1255(a). This statute allows the Attorney General to "adjust" the status of an alien admitted into the United States to that of a lawful permanent resident:

> The status of an alien who was ... admitted ... into the United States may be adjusted by the Attorney General, in his discretion ... to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa *and is admissible* to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

As our emphasis indicates, only those aliens who are "admissible" to the United States are statutorily eligible for discretionary relief under § 1255(a). Under § 1182(a), however, individuals like Esposito who have used false immigration documents to enter the country are expressly "excluded from admission." Because he is

inadmissible, Esposito does not qualify for the benefits of § 1255(a). *See Ng v. INS*, 804 F.2d 534, 538 (9th Cir.1986) (aliens who have gained entry into the United States by means of fraud are inadmissible and hence ineligible for adjustment of status).

### IV.

We recognize that deportation may work a significant hardship upon Esposito and his family. The Board did not, however, abuse its discretion in elevating its concerns about Esposito's past above that hardship in denying his application for waiver of excludability.[3] The decision of the Board of Immigration appeals is therefore

AFFIRMED.

---

**3.** In the deportation proceedings below, an Immigration Judge found that Esposito was also deportable as a specific consequence of his past criminal convictions. *See* 8 U.S.C. § 1182(a)(2) (holding deportable aliens who have been convicted of "crimes involving moral turpitude"). On appeal to the BIA, Esposito argued that he was not excludable under § 1182(a)(2) because the crimes of which he was convicted did not

involve moral turpitude. In the alternative, Esposito claimed that he qualified for a waiver of § 1182(a)(2) excludability, *see* 8 U.S.C. § 1182(h), because of the hardship deportation would work upon his family. The BIA did not rule on the question of whether Esposito was deportable under § 1182(a) and neither do we, as we find him excludable and deportable on the independent grounds discussed above.