NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 30, 2013[*]
Decided June 20, 2013

**Before**

DANIEL A. MANION, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 12-2351

| | |
|---|---|
| CHIA-I LUI-DIX, | Petition for Review of an Order of the Board |
| *Petitioner*, | of Immigration Appeals. |
| | |
| *v.* | No. A098 172 486 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**O R D E R**

After a court in Taiwan convicted her of using heroin, Chia-I Lui-Dix came to the United States on a student visa, married a U.S. citizen, and had a child here. In a petition for adjustment of status, however, Lui-Dix acknowledged her drug conviction. This led the Department of Homeland Security to determine that she was removable, and so it commenced these proceedings. An Immigration Judge concluded that the foreign drug conviction made her ineligible for adjustment of status and ordered her removed, and the

---

[*] The parties agreed to waive oral argument; this appeal is thus submitted on the briefs. See FED. R. APP. P. 34(f).

Board of Immigration Appeals dismissed her appeal. She now petitions this court for review, arguing that the underlying Taiwanese proceeding lacked critical procedural safeguards, relied on questionable evidence, and thus could not be held against her. Foreign convictions, however, need not comply with every detail of U.S. procedure in order to be accepted for immigration purposes, and Lui-Dix has not demonstrated that her conviction in Taiwan was the product of such a fundamentally unfair process that it is subject to collateral attack in an immigration proceeding. Accordingly, we deny her petition for review.

**I**

Lui-Dix is a native and citizen of Taiwan. In 1996, she was convicted in the Taiwan Taichung District Court of using illegal drugs. Four years later, in 2000, she entered the United States on a student visa. She married Paul Dix, a U.S. citizen, and the couple had a child in 2008. After the marriage, Dix successfully petitioned to have his wife designated as an alien relative. At that point, Lui-Dix applied to adjust her status to that of a legal permanent resident, but her application was denied because of her Taiwanese criminal conviction. DHS then instituted proceedings to remove her on the ground that her drug-related conviction rendered her inadmissible at the time of her entry. See 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(2)(A)(i).

According to a translated copy of the Taiwanese court's decision, Lui-Dix and her second husband, Yu-Ping Lin (who died in prison), were convicted of violating Taiwan's Drug Eradication Act after being tried jointly in front of a judge. Lui-Dix and Lin were represented by separate counsel at the trial, which lasted about 15 minutes. They did not have the right to question the chief of police, who was the sole witness at the trial. Lin confessed, however, to smoking heroin mixed with cigarettes daily and to possessing the 1.22 grams of heroin that the police had seized during a search of the couple's home. Although Lui-Dix denied using drugs, the court credited the results of a urine test, conducted using the immunoassay and chromatography methods, which indicated that Lui-Dix had morphine in her system. Based on this positive result, the court wrote that "we can only acknowledge that [Lui-Dix] used the illegal drug one time" within the three days before the police searched her home. Though the court was not certain about the source of the morphine in her urine, it stated that "most drug users use heroin. Rarely do they use morphine. Therefore, the court believes the illegal drug [Lui-Dix] used was heroin." It concluded by noting that "[h]eroin is a drug listed in Article 2 of the Drug Eradication Act. By using this drug, the defendants committed the crime of drug use . . . ." The court sentenced Lui-Dix to three years in prison; she served about a year of that sentence.

Lui-Dix contested her removability based on that conviction in a proceeding before an immigration judge. In her brief, she attacked as unreliable the urine tests used to convict her, and she argued that the evidence presented to the Taiwanese court would not have sufficed to support a guilty verdict under the reasonable-doubt standard. She also submitted the written opinion of a clinical chemist and director of a toxicology lab in Wisconsin, Dr. Joyce Liu Flanagan, who reviewed Lui-Dix's urine test results and criticized the methods used to obtain them. Dr. Flanagan opined that the testers had relied on a "cutoff value" (that is, a concentration level of morphine in the urine above which the test is deemed positive) "too low to be meaningful in forensic cases" in the United States. At such low levels, Dr. Flanagan explained, morphine in the urine can come from legal sources such as prescription or non-prescription drugs containing morphine or from food containing poppy seeds. She also thought that the chromatography and immunoassay tests on which the Taiwanese court had relied were qualitative tests that were inferior to more advanced quantitative options. Lui-Dix's conviction, Dr. Flanagan concluded, was based on the "false assumption that the presence of morphine in urine is conclusive evidence of a person's use of morphine or heroin."

The IJ rejected Lui-Dix's arguments. He noted that her offense of conviction in Taiwan (unlawful use of heroin) would also be a crime in the United States. Even though the standard of proof in Taiwan appeared to be lower than the reasonable-doubt rule that would apply in the United States, the judge found that the procedures used to convict Lui-Dix were "comparable" to those used here, and that they were adequate to permit his reliance on the conviction. Declining to engage in an exhaustive examination of the evidence supporting that conviction, the IJ said that he was "simply not competent to look behind the judgment to the sufficiency of a foreign court's conviction." Because that conviction rendered Lui-Dix inadmissible at the time of her entry, the IJ denied her request for adjustment of status and gave her permission to depart voluntarily within 60 days.

Lui-Dix appealed to the BIA, which upheld the IJ's decision. The Board too observed that the use of illegal drugs is criminal in the United States, and it held that it could rely on the Taiwanese conviction without considering the procedural adequacy of the trial. The Board also concluded that Lui-Dix's conviction related to a controlled substance, for purposes of U.S. law. It treated the translated document from the Taiwanese court as analogous to a U.S. judge's findings of fact and conclusions of law after a bench trial, and it did not second-guess the Taiwanese court's decision to accept the scientific methodology used in the urine test. In addition, the Board noted that whether Lui-Dix actually used morphine or heroin was immaterial, because both are controlled substances for purposes of U.S. law. See 21 U.S.C. § 812. The Board ended by remanding the case to the IJ so that he could instruct Lui-Dix properly on the procedure for voluntary departure. Lui-Dix filed a timely petition for review with this court.

## II

In her petition, Lui-Dix continues to maintain that her Taiwanese conviction should not be considered for immigration purposes, because her trial was unfair and she was subjected to procedural protections that fell well short of U.S. standards. Although she has sharpened that argument somewhat before this court, as compared with her submission to the Board, we are satisfied that she properly exhausted this point. See *Juarez v. Holder*, 599 F.3d 560, 564 n.3 (7th Cir. 2010). Lui-Dix complains in particular about the joinder of her trial with that of her then-husband, the lack of a right to a jury, the absence of a right to cross-examine, the flawed scientific methods used for the urine test, and the insufficiency of the evidence to prove her guilt beyond a reasonable doubt. More broadly, she contends that an alien should be permitted to raise a collateral attack against a foreign conviction that is being used for U.S. immigration purposes, whenever the procedures used in the foreign tribunal are not "substantially similar to criminal proceedings in the United States."

Lui-Dix is mistaken, however, in her assumption that U.S. law insists that foreign procedures track so closely the procedures used in the United States. Neither civil nor criminal procedures are uniform among the 193 countries that are members of the United Nations, yet the great majority of these countries use procedures that are compatible enough to permit the kind of use of foreign outcomes that Congress has called for in the immigration statutes. See *Pasquini v. INS,* 557 F.2d 536, 539 (5th Cir. 1977); *Brice v. Pickett,* 515 F.2d 153, 154 (9th Cir. 1975); *cf. Society of Lloyd's v. Ashenden,* 233 F.3d 473, 476-77 (7th Cir. 2000) (discussing differences between the procedures in the United States and the United Kingdom and explaining why those variations do not prevent recognition and enforcement of a money judgment). The governing statute here provides that "any alien convicted of . . . a violation of . . . any law or regulation of . . . a foreign country relating to a controlled substance . . . is inadmissible." 8 U.S.C. § 1182(a)(2)(A)(I). Courts normally reject aliens' attempts in immigration proceedings to mount collateral attacks on foreign convictions. See, *e.g., Soetarto v. INS,* 516 F.2d 778, 780 (7th Cir. 1975) ("Our function is not to try [] foreign crimes *de novo*."); *Chiaramonte v. INS,* 626 F.2d 1093, 1098 (2d Cir. 1980). Only if there is some evidence that the foreign conviction was obtained in a manner that falls below the standards accepted by any civilized system would it be appropriate to delve into these matters. See *Doe v. Gonzales,* 484 F.3d 445, 451 (7th Cir. 2007) (remanding case to the BIA to consider a collateral attack where foreign court was "kangaroo court to make kangaroos blush," and conviction was "demonstrably . . . a travesty – a parody – of justice).

Lui-Dix has not come close to making such a showing, and thus she is not entitled to relitigate her foreign conviction in her removal proceedings. It would be inappropriate for us to open the door to attacks on run-of-the-mill foreign convictions, when Congress has specified that aliens with certain kinds of criminal convictions (including those for

controlled-substance crimes) are inadmissible. See 8 U.S.C. § 1182(a)(2)(A)(i). As long as the door remains open for a closer look at the foreign conviction in the kind of case we encountered in *Doe*, we see no reason why Congress should have been precluded from closing the doors to the United States for aliens who have failed to comply with the designated criminal laws of their own countries.

Lui-Dix also argues that the record of her conviction does not establish that she was convicted of using a drug that was illegal in the United States, as required to demonstrate inadmissibility under 8 U.S.C. § 1182(a)(2)(A)(i)(II). But it does. It is true that Lui-Dix was convicted of violating a statute that generically prohibits the "use of drugs," and that this alone would not establish that the drug used was a controlled substance under U.S. law. See *id.* But the BIA is permitted to examine documents related to the foreign conviction to ascertain whether it was for conduct that made her inadmissible. See *Mata-Guerrero v. Holder,* 627 F.3d 256, 260 (7th Cir. 2010); *Ali v. Mukasey,* 521 F.3d 737, 742-43 (7th Cir. 2008). The translated copy of the Taiwanese court's judgment, the relevant parts of which we quoted earlier, makes it clear that the judge concluded that Lui-Dix used heroin. We understand that Lui-Dix believes that this conclusion was not supported by sufficient evidence, but that is simply another way of collaterally attacking the conviction, and we have already concluded that she may not do this.

The petition for review is **DENIED**.