# United States Court of Appeals
## For the First Circuit

No. 20-1913

FLAVIO ANDRADE-PRADO, JR.,

Petitioner,

v.

MERRICK B. GARLAND,

United States Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Kayatta, Gelpí, and Montecalvo,
Circuit Judges.

Jason Giannetti, with whom Law Offices of Jason Giannetti,
Esq. was on brief, for petitioner.
Jeffrey R. Leist, Senior Litigation Counsel, Office of
Immigration Litigation, with whom Brian Boynton, Principal Deputy
Assistant Attorney General, Civil Division, and Anthony C. Payne,
Assistant Director, Office of Immigration Litigation, were on
brief for respondent.

April 4, 2023

**GELPÍ**, **Circuit Judge**.  Petitioner Flavio Andrade-Prado, Jr. ("Petitioner" or "Andrade-Prado") seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA dismissed Andrade-Prado's appeal of the immigration court's decision concluding that his Brazilian conviction (which carried a sentence of over seven years) constituted both an aggravated felony and a particularly serious crime rendering him ineligible for asylum, withholding of removal, cancellation of removal, and voluntary departure.  The BIA upheld the immigration court's conclusion that Andrade-Prado's foreign conviction was valid and thus barred him from relief.  Because substantial evidence supports the BIA's determination, we find no error of law and deny Andrade-Prado's petition for review.

## I. Background

### A. Andrade-Prado's Foreign Conviction

Petitioner was born and raised in Poço Fundo, Minas Gerais, Brazil.  Throughout his childhood and teenage years, he dealt with physical and psychological trauma largely due to police militias and criminal groups in his hometown.  While in Brazil, Petitioner was in a relationship with a woman to whom we shall refer as M.C.D.P., which ended in 2004.  In April 2005, M.C.D.P. accused Petitioner of rape, which led to his arrest and prosecution.  Petitioner remained in pre-trial detention for the pendency of his case, was represented by a court-appointed

- 2 -

attorney, appeared in court once -- on September 28, 2006 -- for an evidentiary hearing on the merits of the charges against him, and through his attorney, presented a defense, produced documentary evidence, and had the opportunity to cross-examine the victim at that evidentiary hearing (although he declined to do so). Subsequently, a Brazilian judge convicted Petitioner of rape and sentenced him to seven years and six months of imprisonment. In May 2008, while Petitioner was in a work release program, he escaped from prison and fled to Panama, and eventually entered the United States in August 2008 via a Texas border crossing. A Brazilian arrest warrant was issued on July 13, 2012.

### B. Life in the United States

While working in Taunton, Massachusetts, Petitioner met his wife. They began dating in 2010, moved to Brockton in 2011, had their first child a year later, and were married in November 2013. Their second child was born in 2018. Petitioner's wife and children are U.S. citizens. Along with his wife, Petitioner owned a carpentry business. In 2017, Petitioner engaged a Brazilian lawyer to try to expunge his Brazilian rape conviction.[1]

On April 25, 2019, Immigration and Customs Enforcement ("ICE") officers, along with Brockton, Massachusetts police

---

[1] It is unclear from the record the status of the proceedings to expunge the foreign conviction. Petitioner's contact with said Brazilian attorney has since ceased.

officers, arrested Petitioner after Department of Homeland Security ("DHS") agents were notified by a Brazilian Civil Police Agent about the 2012 arrest warrant for Petitioner. Shortly before the arrest, the International Criminal Police Organization, commonly known as INTERPOL, issued a Red Notice for Petitioner.[2]

On April 25, 2019, DHS served Petitioner with a Notice to Appear charging that he was subject to removal under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen who was neither admitted nor paroled. He conceded the allegations in the Notice to Appear and sought asylum, withholding of removal, protection under the Convention Against Torture ("CAT"), cancellation of removal, voluntary departure, and adjustment of status.

**C. Removal Proceedings**

**1. Immigration Court**

Petitioner appeared before the immigration court on July 23, 2019 for removal proceedings. Having conceded removability, the focus of the hearing was Petitioner's eligibility for relief. As a threshold matter, individuals with rape convictions are statutorily barred from all forms of relief

---

[2] "An INTERPOL Red Notice is 'a request to law enforcement worldwide to locate and provisionally arrest a person pending extradition, surrender, or similar legal action.'" Hernandez Lara v. Barr, 962 F.3d 45, 48 n.3 (1st Cir. 2020) (quoting Red Notices, INTERPOL, https://www.interpol.int/en/How-we-work/Notices/Red-Notices (last visited Feb. 9, 2023)).

Petitioner requested, except for CAT deferral. Though Petitioner conceded that he had been convicted of rape in Brazil, he argued that his foreign conviction is not applicable for immigration purposes for two reasons. First, he advanced that his conviction was "in absentia," making it invalid for immigration purposes. In the alternative, he argued that the conviction should nevertheless be set aside because the proceedings were so flawed as to render the conviction invalid.

When questioned by the immigration judge ("IJ") about the "in absentia" reference on Petitioner's Form I-213,[3] Petitioner's counsel stated that it was his understanding "that [Petitioner] was present for a trial in Brazil[.]"[4] Because the question of whether Petitioner's Brazilian conviction was valid for immigration purposes would dictate the relief available, the IJ set a hearing on that issue for August 16, 2019. Accordingly, DHS submitted a memorandum explaining that Form I-213's indication that Petitioner had been convicted in absentia was an error because

---

[3] Form I-213 is "a standard government form that documents biographical and factual information about a deportable or inadmissible [noncitizen]." Garcia-Aguilar v. Lynch, 806 F.3d 671, 673 (1st Cir. 2015). The relevant text from Petitioner's Form I-213 reads: "On 05/08/2008, [Petitioner] escaped from the prison in Poço Fundo, Minas Gerais and was convicted in Brazil for rape in absencia [sic]."

[4] Counsel additionally clarified that "[t]he conviction on rape was not an in absentia conviction. [Petitioner] was in Brazil for that hearing."

- 5 -

the in absentia language on said document referred to Petitioner's prison escape. Thus, DHS maintained that the conviction was valid for removal purposes. Petitioner replied that he was not afforded due process, his only time in court was for his arraignment, and he was unable to cross-examine his accuser and present evidence. He further argued that he learned of his conviction when he received a letter, while in prison, that notified him of the time he had to serve.

At the August 16, 2019 hearing, the IJ informed Petitioner's counsel and DHS that if he found that the rape conviction was not valid for immigration purposes, the only relief available to Petitioner would be under the CAT. The parties agreed with the IJ, as well as on the classification of the offense as an aggravated felony and a particularly serious crime due to the seven-year sentence imposed. Likewise, the parties agreed that the only disputed issue was the foreign conviction's validity for immigration purposes. The removal proceedings were continued until September 26, 2019. At said hearing, Petitioner, who had court-appointed counsel, testified about his upbringing and his relationship with M.C.D.P. He also stated that after his arrest in Brazil, his case was assigned to a judge who had run against his cousin in a mayoral election.[5] He further explained that he

_____

[5] Although Petitioner's testimony before the IJ did not hint as to when his cousin and the Brazilian judge ran against each

- 6 -

was present at a hearing where both he and M.C.D.P. testified, and he denied the charge against him. When questioned by the IJ about having the opportunity to cross-examine M.C.D.P., Petitioner replied that although his attorney had the chance to, he decided not to. He was also allowed to present evidence, such as the police report and medical evaluation, to bolster his defense. He was not convicted at said hearing itself. Rather about a year later, he received a letter in prison notifying him of his rape conviction. He appealed said conviction, and was denied in 2007. Petitioner additionally testified before the IJ that the purported victim had recanted, and presented a statement dated May 7, 2019, to the IJ that, he asserted, the victim had emailed to his wife recanting the rape allegation.

### 2. The IJ's Decision

On December 10, 2019, the IJ issued his decision denying Petitioner's claims for asylum, withholding of removal, protection under the CAT, cancellation of removal, and voluntary departure. The IJ determined that Petitioner's rape conviction, and corresponding seven-year sentence, was cognizable for immigration purposes and constituted both an aggravated felony and a particularly serious crime (which the Petitioner had conceded during the previous hearing), statutorily barring asylum,

---

other, in his reply brief he states that the electoral campaign occurred "over fifteen year[s] prior" to the rape charges.

withholding relief, and cancellation of removal. The IJ found that Petitioner testified "credibly and consistently . . . regarding his experience in Brazil and his fear of return, as well as the hardships his children would experience upon his removal[.]" The IJ refused to credit Petitioner's testimony as to his arrest and alleged in absentia conviction. The IJ instead credited DHS's representation that the in absentia statement on Petitioner's Form I-213 was an error based on a misreading of the record. While Petitioner may have appeared before the Brazilian court only once, he admitted that he was allowed to appear and present evidence, had court-appointed counsel, had witnesses testify in his favor, and received notification of his conviction. Thus, the IJ found that there was insufficient evidence demonstrating that he had been convicted in absentia, or that the proceedings in Brazil did not sufficiently comply with due process.

The IJ also determined that the Petitioner committed a serious nonpolitical crime in Brazil -- a second bar to asylum and withholding of removal. The IJ gave little to no weight to evidence proffered by Petitioner because he sought to rely on an attachment to an email that appears to be a sworn letter by M.C.D.P. recanting her accusations (the "recantation letter"), presented no evidence to validate its authenticity, and M.C.D.P. was not present to testify or be cross-examined.

Regarding the CAT claim -- focusing solely on CAT deferral -- the IJ decided that the evidence was insufficient to indicate that Petitioner was tortured in the past by government officials or that he was more likely than not to be tortured in the future. While the IJ credited that Petitioner suffered "physical and psychological abuse while imprisoned at the hands of other inmates and prison guards," he explained that "harsh prison conditions alone" do not necessarily constitute torture. As such, the IJ held that Petitioner was ineligible for deferral of removal under the CAT.

Finally, the IJ concluded that a crime of moral turpitude barred Petitioner from cancellation of removal but, even assuming arguendo that he was not barred from said relief, he failed to provide sufficient evidence to show that his wife and children would endure "exceptional and extremely unusual hardships." Likewise, Petitioner was statutorily ineligible for voluntary departure due to the aggravated felony conviction.

### 3. Appeal to the BIA

The BIA dismissed Petitioner's appeal on September 16, 2020. Citing to BIA precedent, it first noted that it had no jurisdiction to entertain collateral attacks on the merits of the Brazilian conviction and would refrain from opining on its validity. See Matter of McNaughton, 16 I. & N. Dec. 569, 571 (B.I.A. 1978). It subsequently affirmed the IJ's determination

- 9 -

on the validity of the rape conviction for immigration purposes. Likewise, the agency affirmed the IJ's "particularly serious crime" and "serious nonpolitical crime" determinations -- observing that neither were meaningfully challenged by Petitioner -- thus affirming de novo the asylum and withholding of removal bars. The BIA found no "legal or clear factual error" regarding the IJ's determination that Petitioner failed to establish past persecution or a well-founded fear of persecution on the statutorily enumerated grounds. It also found Petitioner's appellate arguments regarding past persecution unpersuasive because they were unsupported by citation to legal authority. Regarding cancellation of removal, the agency affirmed the IJ after concluding that the claim was barred because Petitioner did not challenge "the [IJ's] determination that his rape conviction constitutes a disqualifying offense for cancellation of removal purposes." As for Petitioner's claim that the IJ's denial of his asylum application violated his due process rights, the BIA likewise found no error where he failed to demonstrate prejudice resulting from the alleged violation. Lastly, Petitioner's submission of additional evidence on appeal -- a declaration by an ICE officer, a duplicate copy of the Brazilian conviction certificate, and correspondence from his Brazilian attorney -- was construed as a motion to remand. The BIA concluded that remand was unwarranted because Petitioner failed to demonstrate that the

evidence submitted was previously unavailable and that it was material to his claims. Petitioner timely appealed.

### 4. Proceedings Pending Appeal

On October 19, 2020, Petitioner filed a motion to stay removal pending the resolution of his petition for review, which this court granted. On May 3, 2021, this court, at the government's request, vacated in part the BIA's decision and remanded the matter for the BIA to clarify its reasoning in finding that Petitioner had not meaningfully addressed the IJ's denial of deferral of removal under CAT, and if necessary, to make a determination on the merits of said relief. On August 31, 2022, the IJ denied Petitioner's application for CAT deferral and ordered him removed to Brazil. Consequently, Petitioner and the government jointly requested that we rescind the stay of removal previously issued. As a result, on October 3, 2022, we lifted the stay. Soon after, Petitioner was removed to Brazil, where he remains. Thus, the only live issue before us is the Brazilian conviction's validity for immigration purposes.

### II. Standard of Review

"Where, as here, 'the BIA adopts and affirms an IJ's decision, we review the IJ's decision to the extent of the adoption, and the BIA's decision as to [any] additional ground.'" López-Pérez v. Garland, 26 F.4th 104, 110 (1st Cir. 2022) (alteration in original) (quoting Sunoto v. Gonzales, 504 F.3d 56,

- 11 -

59-60 (1st Cir. 2007)).  We review factual findings for substantial evidence, which we accept as true "unless the record is such as to compel a reasonable factfinder to reach a contrary conclusion." Dorce v. Garland, 50 F.4th 207, 212 (1st Cir. 2022) (quoting Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013)). Questions of law are reviewed de novo, with some deference given to the agency's reasonable interpretation.  Id.

### III. Discussion

Petitioner argues that his Brazilian conviction was in absentia and that both the IJ and BIA erred in determining that said conviction is valid for immigration purposes, thus barring him from obtaining asylum, withholding of removal, and cancellation of removal.  Even without an in absentia finding, Petitioner argues that his Brazilian conviction is nevertheless invalid for immigration purposes either because the proceedings were fundamentally deficient -- a "travesty of justice" -- or because the trial judge was politically motivated.  We discern no error.

### A. Statutory Prerequisites for Relief

To qualify for asylum, an applicant must demonstrate that he or she has not been convicted of a particularly serious crime.  See 8 U.S.C. § 1158(b)(2)(A)(ii).  Moreover, the statute provides that an applicant "who has been convicted of an aggravated felony shall be considered to have been convicted of a particularly

serious crime." 8 U.S.C. § 1158(b)(2)(B)(i); see also 8 U.S.C. § 1231(b)(3)(B). An aggravated felony is a "crime of violence . . . for which the term of imprisonment is at least "one year." 8 U.S.C. § 1101(a)(43)(F). The same statutory bars apply to an applicant who seeks withholding of removal. See DeCarvalho v. Garland, 18 F.4th 66, 69-70 (1st Cir. 2021); 8 U.S.C. § 1231(b)(3)(B)(ii). Similarly, a noncitizen is ineligible for cancellation of removal if he or she has been convicted of an aggravated felony or a crime involving moral turpitude. See Soto-Vittini v. Barr, 973 F.3d 20, 21 (1st Cir. 2020) ("A permanent resident convicted of an 'aggravated felony' after admission is not only removable under the INA, . . . but also ineligible for cancellation of removal." (quoting 8 U.S.C. §§ 1227(a)(2)(A)(iii), 1229b(a))). Petitioner conceded before the IJ that his foreign conviction, if found to be valid, constitutes an aggravated felony and a particularly serious crime that statutorily bars the relief sought (except for CAT deferral, which was denied on other grounds as explained supra). Given the foregoing concession, and after weighing the evidence, the IJ ultimately found the conviction to be valid, statutorily barring Petitioner from relief. We discern no error.

## B. Petitioner's In Absentia Claim

Petitioner challenges the IJ's finding as to the validity of his Brazilian conviction, arguing that it was in

absentia because he was only present at the arraignment hearing and did not learn of his sentence until he eventually received notice via a letter sent to him in jail. In support of his contention, he quotes the Foreign Affairs Manual from the Department of State which explains that "[a] conviction in absentia does not constitute a conviction, unless the accused had a meaningful opportunity to participate in the judicial proceedings." Additionally, he advances that because the information in a Form I-213 is presumed trustworthy, the agency should have treated the form's characterization of his conviction as reliable evidence that his conviction was in absentia. The record before us belies Petitioner's arguments. Ample evidence supports the IJ's findings, which were affirmed by the BIA.

Here, the record supports the BIA's conclusion that Petitioner was able to meaningfully participate in his Brazilian proceedings and thus his resulting conviction was not in absentia. Petitioner was represented by court-appointed counsel at the Brazilian court, was allowed to testify, the victim and two witnesses -- the latter testifying in Petitioner's favor -- were present, he offered documentary evidence (a police report and a medical evaluation), and he got notice of his conviction, which he appealed. Petitioner posits that his attorney did not cross-examine the victim, however, the record indicates that, in fact, the attorney could have asked her questions but chose not to, which

Petitioner admitted before the IJ. Petitioner is unable to point to anything that suggests that having one hearing -- where the victim, the accused, as well as other witnesses testified -- renders a conviction in absentia. As Petitioner recognizes in his brief, "[a] foreign conviction entered after a trial at which the defendant was present suffices, in and of itself, to establish probable cause." See Matter of V-D-B-, 8 I. & N. Dec. 608, 610 (B.I.A. 1960) (finding that the applicant's conviction in the Netherlands was not a conviction in absentia when he had notice of the proceedings, appeared after the conclusion, took no appeal, and paid the fine).

Petitioner similarly advances that the immigration court failed to do a "searching review" of the evidence supporting the foreign conviction before finding it barred relief and thus the conviction should be disregarded. He relies on sibling circuit caselaw to back up his theory, arguing that in Esposito v. INS, 936 F.2d 911 (7th Cir. 1991), the Seventh Circuit held that the BIA may disregard or give less weight to an in absentia conviction when evidence calls into question the fundamental fairness of the proceedings which generated said conviction. Id. at 914-15. He further alleges that, contrary to the proceedings before the IJ, the court in Esposito conducted a "careful and searching review of the evidence" in order to corroborate its validity and fairness. We find, without needing to reach the question of whether the rule

- 15 -

in Esposito applies in this circuit, that there is no merit to Petitioner's argument. First, Esposito is readily distinguishable because unlike the Petitioner's case, the Seventh Circuit was presented with an actual in absentia conviction, which justified closer inspection of the underlying offense. See id. at 915. Second, far from conducting a "careful and searching review of the evidence" underlying the conviction as Petitioner suggests, the Esposito court reviewed the hearing for "exceptional procedural infirmities" and concluded that there were none, such that the in absentia conviction was valid for immigration purposes. Id. (noting Esposito was represented by counsel and was able to present evidence, cross-examine witnesses, and make arguments to the court). As we discuss infra, no exceptional procedural infirmities existed in Petitioner's Brazilian proceedings to justify disregarding his conviction. Thus Petitioner's Esposito argument fails.

In an attempt to further question, and ultimately invalidate his foreign conviction, Petitioner challenges an explanation proffered by DHS regarding the statement contained in Form I-213 (indicating that Petitioner was convicted in absentia), which was relied upon by the IJ and BIA. He claims that DHS's explanation was inadmissible due to its hearsay character and thus prejudicial because it was the only evidence available to cast

doubt on the "inherently trustworthy" nature of Form I-213. We review de novo. <u>Dorce</u>, 50 F.4th at 212.

Here, DHS clarified before the IJ that, after speaking with colleagues in Brazil, Form I-213's statement indicating that Petitioner "was convicted in Brazil for rape in absentia" was based on a misinterpretation -- what it actually indicated was that Petitioner had escaped from custody and was missing thereafter. The IJ was cautious in giving significant weight to the clarification provided by DHS but ultimately found it credible. The BIA agreed.

An IJ's determination "shall be based only on the evidence produced at the hearing." 8 U.S.C. § 1229a(c)(1)(A). While DHS's statement could be regarded as hearsay, immigration proceedings are not governed by the rules of evidence. See <u>Yongo</u> v. <u>I.N.S</u>., 355 F.3d 27, 30 (1st Cir. 2004) ("The Federal Rules of Evidence do not apply in INS proceedings."); <u>Matter of Barcenas</u>, 19 I. & N. Dec. 609, 611 (B.I.A. 1988). Petitioner's own testimony about his attendance at the proceeding in Brazil indicated that the form was incorrect, and from that point the form was no longer inherently trustworthy. See <u>Matter of Barcenas</u>, 19 I. & N. Dec. at 611 ("Absent any indication that a Form I-213 contains information that is incorrect . . . , that document is inherently trustworthy and admissible as evidence to prove . . . deportability."). Here, "the record as a whole

- 17 -

presents a picture consistent with the IJ's adverse [] determinations." Jianli Chen v. Holder, 703 F.3d 17, 26 (1st Cir. 2012). Regardless of Form I-213, the evidence in the record (as we have discussed supra) independently establishes that Petitioner was not convicted in absentia. Thus, we find no error of law and hold that the Brazilian conviction is valid for immigration purposes. Having found that the Brazilian conviction was not in absentia, we consider Petitioner's alternate claims.

## 1. Travesty of Justice

Petitioner posits that his foreign conviction was an "unpersuasive travesty of justice" that should have persuaded the IJ to evaluate the fundamental fairness of his foreign conviction. He proffers that the Brazilian judge was biased, that the IJ gave no credit to the recantation letter, and that he was only present at the initial hearing. He additionally alleges that the BIA failed to consider the merits of his claim.

Petitioner relies on sibling circuit caselaw that held that the IJ erred by failing to consider the legitimacy of the conviction where the foreign conviction had multiple mishaps and was a "farce." See Doe v. Gonzales, 484 F.3d 445, 451-52 (7th Cir. 2007).[6] Even assuming that such a collateral attack on the

---

[6] Doe involved the trial for the murder of one Jesuit priest and five members of the order in El Salvador during the civil war that raged from 1980 to 1992. Doe's trial attorney was on the payroll of the high command of the Salvadoran armed forces and

foreign conviction is permitted,[7] we are not persuaded that the "farce" or "travesty of justice" labels apply here. The circumstances in Doe are different from the case at hand. In Doe, the trial attorney did not defend his client, presented no evidence on Doe's behalf, did not cross-examine any of the witnesses, and the judge trying the case failed to instruct the jury on the law. Doe, 484 F.3d at 451. We do not need to discuss, once again, why Petitioner's circumstances are distinct from the ones in Doe. Moreover, Petitioner suggests that, unlike the court in Esposito, 936 F.2d at 911, here the IJ had "credible evidence of actual innocence" -- the victim's recantation letter -- which he disregarded. An IJ may "sift through relevant documents,

---

"focused his efforts not on defending [Doe] but on asserting the innocence of the high command, though no members of that body were on trial." 484 F.3d at 446-47, 451.

[7] "Courts normally reject [noncitizens'] attempts in immigration proceedings to mount collateral attacks on foreign convictions," and "[o]nly if there is some evidence that the foreign conviction was obtained in a manner that falls below the standards accepted by any civilized system would it be appropriate [to entertain a collateral attack on a foreign conviction]." Chia-I Lui-Dix v. Holder, 528 Fed. App'x 595, 598 (7th Cir. 2013). There is no per se rule that foreign convictions in absentia are not valid for immigration purposes, although "a petitioner may present evidence that calls into question the fundamental fairness of the proceedings which generated an in absentia conviction, and if that evidence is sufficiently compelling, the Board would be precluded from giving it any weight at all." Esposito, 936 F.2d at 914. In the rare case "in which the proceeding that resulted in the conviction was demonstrably . . . a travesty -- a parody -- of justice," the foreign conviction may be invalid for immigration purposes. Doe, 484 F.3d at 445.

determining which documents are persuasive and which statements within a particular document should be given weight." Jianli Chen v. Holder, 703 F.3d at 26. The IJ considered the victim's recantation letter but found it unreliable because Petitioner did not provide an original copy of the letter (he claimed that a digital copy was emailed to his wife), there was no evidence to evaluate its authenticity, and the victim was not present to testify or be cross-examined. See Mashilingi v. Garland, 16 F.4th 971, 978 (1st Cir. 2021) (explaining that the IJ did not err in giving limited weight to petitioner's children's statements because they were not available for cross-examination); Tawadrous v. Holder, 565 F.3d 35, 39 n.2 (1st Cir. 2009) (agreeing with the BIA's assessment that petitioner's father's statement had little or no weight because it was an unauthenticated photocopy).

For the foregoing reasons, Petitioner falls well short of even raising prima facie a basis for suggesting that the Brazilian proceedings were a farce. The IJ considered all of the evidence before him and made credibility determinations that well-supported the denial of relief. We discern no error.

## 2. Politically Motivated Conviction

Lastly, Petitioner argues that his foreign conviction was a politically motivated one that should not bar him from relief under 8 U.S.C. § 1182(a)(2)(A)(i)(I), 8 U.S.C. §§ 1101(a)(2)(A)(i)(I) and 1101(a)(43)(F), and 22 C.F.R.

§ 40.21(a)(6)(2006).  His arguments can be summarized as follows: He was almost killed -- before the rape charges -- by corrupt law enforcement in his town because they wanted him "eliminated"; his cousin politically challenged the Brazilian judge that handled his rape proceedings and he was convicted because of the judge's bias; and the IJ misinterpreted the term "political offense."  However, he points to no evidence supporting his first three conclusory statements that the conviction was politically motivated rather than the result of the rape accusation and victim's testimony.  As to the "political offense" interpretation, Petitioner perfunctorily posits that the offense itself was not inherently political, rather he argues that his conviction was the result of the "corrupt [Brazilian justice] system" and the "political animus and prejudice of the judge," which prevented him from having a fair trial.  He does not, however, elaborate on this or otherwise support said assertion with legal authority.  Where the substantial evidence supports the IJ's conclusion that Petitioner's conviction was not politically motivated, we discern no error.

**IV. Conclusion**

For all the above reasons, Andrade-Prado's petition is **DENIED.**

- 21 -